UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:_____
DATE FILED:  05/29/2015
```

------------------------------------------------------------------X
                                                              :
UNITED STATES,                                                :
                                                              :           15-CR-0021 (JMF)
                                                              :
           -v-                                                :           OPINION AND ORDER
                                                              :
TEODORO GONZALEZ,                                             :
                                                              :
                               Defendant.                     :
                                                              :
------------------------------------------------------------------ X

JESSE M. FURMAN, United States District Judge:

        Defendant Teodoro Gonzalez, charged with one count of illegal reentry after having been

removed from the United States, in violation of Title 8, United States Code, Section 1326(a) and

(b)(1), moves to dismiss the indictment.  Specifically, Gonzalez challenges the validity of the

removal order pursuant to which he was previously removed from the United States, arguing that

entry of the order was "fundamentally unfair" within the meaning of Section 1326(d)(3) because

the immigration judge and his immigration lawyer failed to advise him about his right to seek a

form of discretionary relief called "voluntary departure."  That argument requires the Court to

decide whether the failure to inform an alien about the right to seek voluntary departure can

qualify as "fundamental error."  In light of *United States v. Copeland*, 376 F.3d 61, 70 (2d Cir.

2004), which addressed a related issue, the Court follows the only courts within this Circuit to

have decided the question and holds that the failure to inform an alien about the right to seek

voluntary departure does indeed qualify as fundamental error if the alien shows that he was

prejudiced by the error.  Additionally, the Court finds that Gonzalez has shown by a

preponderance of the evidence that he was prejudiced by the error in his case.  Accordingly, and

for the reasons explained below, Gonzalez's motion is granted and the indictment is dismissed.

## THE STATUTORY FRAMEWORK

An alien facing removal from the United States can apply for various forms of discretionary relief.  Three forms of such relief are relevant in this case.  The first is adjustment of status pursuant to Section 245(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(i).  Section 245(i) provides, in relevant part, that an alien who is "physically present" in the United States and meets certain other criteria may apply to adjust his or her status to that of a permanent resident if "(A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (B) an immigrant visa is immediately available to him at the time his application his filed."  *Id.* § 1255(i)(2).  Pursuant to the plain terms of the statute, if an alien is inadmissible to the United States as a permanent resident — for example, because of a conviction of "a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance," *id.* § 1182(a)(2)(A)(ii) — the alien is ineligible for adjustment of status, even if he or she can satisfy the statute's other requirements.

The second relevant form of discretionary relief is "pre-hearing voluntary departure" pursuant to Title 8, United States Code, Section 1229c(a).  Pursuant to that provision, the Government may permit an alien to "voluntarily depart the United States at the alien's own expense . . . in lieu of being subject to [removal proceedings] or prior to the completion of such proceedings."  To be eligible for pre-hearing voluntary departure, the alien must request it "prior to or at the master calendar hearing," concede removability, withdraw any other requests for relief that have previously been made, and waive appeal.  8 C.F.R. § 1240.26(b).  Significantly, an alien may request pre-hearing voluntary departure at any time before the final order of removal is entered — even if the immigration judge has already denied other requests for relief,

so long as the alien withdraws his requests for such relief.  *See United States v. Garcia*, No. 08-CR-32 (ARR), 2008 WL 3890167, at *10 (E.D.N.Y. Aug. 19, 2008).

Third, an alien can request "post-hearing voluntary departure" — that is, voluntary departure *after* the completion of removal proceedings — pursuant to Title 8, United States Code, Section 1229c(b).  Notably, unlike an alien seeking pre-hearing voluntary departure, an alien seeking post-hearing voluntary departure must demonstrate that he "is, and has been, a person of good moral character for at least 5 years immediately preceding" his application for voluntary departure.  8 U.S.C. § 1229c(b)(1)(B).  To satisfy that requirement, the alien must show, among other things, that he has not "been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more."  *Id.* § 1101(f)(7).  Thus, although an alien who has recently been incarcerated for an aggregate period of 180 days or more might be eligible for pre-hearing voluntary departure, he would not be eligible for post-hearing voluntary departure.

Whether granted pre-hearing or post-hearing, voluntary departure offers an alien several benefits.  *See Dada v. Mukasey*, 554 U.S. 1, 11 (2008).  First, an alien who is granted voluntary departure may be able to avoid "extended detention pending completion of travel arrangements." *See id.*  (If the immigration judge finds it to be necessary, however, the judge may grant voluntary departure "with safeguards," in which case the alien would remain in custody until he or she leaves the United States.  *See El Badrawi v. United States*, 787 F. Supp. 2d 204, 231-32 (D. Conn. 2011).)  Second, the alien may choose his departure date.  *See Dada*, 554 U.S. at 11. Third, in some cases, voluntary departure "facilitates the possibility of readmission" because an alien who voluntarily departs may "sidestep some of the penalties attendant to deportation," including, for example, those providing that an alien who is deported would not be eligible for

readmission until a certain amount of time has elapsed. *Id.* And lastly, unlike an alien who is deported, an alien who returns to the United States without permission after being granted voluntary departure would not be subject to criminal prosecution for illegal reentry pursuant to Title 8, United States Code, Section 1326(a). *See Garcia*, 2008 WL 3890167, at *6.

Notably, the BIA has held that if an alien is apparently eligible for voluntary departure, the immigration judge must inform him about its availability and give the alien an opportunity to apply. *See In re Cordova*, 22 I. & N. Dec. 966, 970-71 (BIA 1999). The immigration judge must make such disclosures no later than the master calendar hearing or, if there is no such hearing, "prior to the taking of pleadings." *Id.* at 971. The BIA based its ruling not only on a regulation requiring that an alien must be informed about "her eligibility for benefits," including voluntary departure, but also to ensure that voluntary departure is used "fairly." *Id.* Indeed, the BIA went so far as to find that the requirement is necessary "to accord full due process to all aliens who may be eligible" for relief. *Id.* at 970-71. If the immigration judge does not inform the alien about the right to seek voluntary departure, the BIA will vacate the order of deportation and remand. *See id.* at 972; *see also, e.g.*, *In re Necitas Mallari Dangan*, 2014 WL 3795545, at *1 (BIA June 16, 2014) (unpublished) (remanding the case to the immigration judge when the judge failed to inform the alien about the availability of voluntary departure); *In re Alejandro Jose Betances*, 2014 WL 3795482, at *1 (BIA June 10, 2014) (unpublished) (same).

## FACTS

With that framework in mind, the Court turns to the facts of the instant case, derived from the parties' submissions and an evidentiary hearing held on April 17, 2015. (The relevant facts are undisputed except where noted.) Gonzalez, a citizen of the Dominican Republic, first entered the United States in or about 2000, without being admitted or paroled and without a valid

entry document.  (Habib Decl. (Docket No. 14), Exs. D, G ¶ 3).  In 2001, he married a United States citizen, Iris Velazquez, and subsequently applied for adjustment of status (or Section 245(i) relief) based on their marriage.  (*Id.*, Exs. A, B).  In 2006, however, before his application for adjustment of status was resolved, Gonzalez pleaded guilty in Connecticut state court to possession of heroin, and was sentenced to three years in prison.  (*Id.*, Exs. C, D).

While Gonzalez was serving his sentence, he received a notice to appear in removal proceedings.  (*Id.*, Ex. D).  He was represented in those proceedings by an attorney named Milagros Cruz ("Cruz" or "immigration counsel") from the law firm DeCastro Foden.  (Evidentiary Hr'g Tr. (Docket No. 36) ("Tr.") 4-5, 11).  Cruz began representing Gonzalez in or about January 2007, at which point she was relatively new to the practice of immigration law; specifically, she had begun practicing immigration law only in 2005.  (*Id.* at 4-5).  She and Gonzalez met in jail two times in advance of his immigration hearing on May 4, 2007: once on January 12, 2007, and again on April 27, 2007.  (*Id.* at 10, 48 (discussing notes from two meetings prior to the date of the hearing); Defense Ex. B).  In an affidavit, Gonzalez asserts that Cruz failed to inform him about the possibility of voluntary departure.  (Habib Decl., Ex. G ¶ 4).  Based on Cruz's testimony at the evidentiary hearing held on April 17, 2015, however, the Court finds that she did mention voluntary departure to Gonzalez, but only in their first meeting.  (Tr. 9-14, 19, 54, 58, 60).  At that meeting, Cruz reviewed three forms of relief with Gonzalez — relief that, in her view, "he was available for": asylum, adjustment of status, and "voluntary departure with safeguards."  (*Id.* at 10-11).

Significantly, the Government concedes that Gonzalez's drug conviction rendered him statutorily ineligible for adjustment of status — thus, the only relief realistically available to him was pre-hearing voluntary departure.  *See* 8 U.S.C.  §§ 1182(a)(2)(A)(i)(II); 1255(i)(2)(A).

(Gov't's Post-Hr'g Mem. (Docket No. 34) ("Gov't's Post-Hr'g Mem.") 7).  Cruz, however, did not advise Gonzalez of that fact, and for one simple reason: she was not aware of it.  In fact, at the evidentiary hearing held on April 17, 2015, she testified that, in her view, Gonzalez could have been granted adjustment of status under Section 245(i) if his wife — from whom he was separated — appeared at his deportation hearing.  (Tr. 15, 39, 57-58).  She also maintained that he was eligible for both pre-merits *and* post-merits voluntary departure.  (*Id.* at 14, 43).  Further, she maintained that if Gonzalez's request for adjustment of status had been denied by the immigration judge, he would have then had "a possibility of appeal" and that his case would have been "arguable on appeal."  (*Id*. at 39-40, 60).  When pressed what her argument on appeal would have been, however, Cruz said only: "At the time I would not have known."  (*Id.* at 40).

Thus, the Court finds that, at the very first meeting with Cruz, Gonzalez was presented with a choice between seeking adjustment of status — even though he was statutorily ineligible for that form of relief — and departing voluntarily and remaining incarcerated until that date.  Presented with that false choice, Gonzalez opted to seek adjustment of status, explaining that he did not want to remain in jail and that he wanted to remain in the United States rather than returning to the Dominican Republic.  (*Id.* at 10, 12, 14).  The Court further finds that Cruz never again discussed the option of seeking voluntary departure with Gonzalez because she concluded that "it would have been fruitless" in light of her understanding that Gonzalez desired to remain in the United States as long as possible.  (*Id.* at 60; *see also id.* at 18-19).

Gonzalez's deportation hearing was held on May 4, 2007, before Immigration Judge Straus.  (Gov't Ex. 1TE ("Immigration Hr'g Tr.")).  Cruz appeared in person; Gonzalez participated by video from the jail.  (*Id.* at 10).  Notably, although Cruz (erroneously) believed that Gonzalez's eligibility for adjustment of status turned on his wife appearing at the hearing,

Cruz made no effort to secure his wife's appearance at the hearing and she did not appear.  (Tr. 63).  At the hearing, the immigration judge pretermitted Gonzalez's application for adjustment of status based on his statutory ineligibility.  (Immigration Hr'g Tr. 16-17).  When the judge asked Cruz (in English) whether Gonzalez was seeking any other form of relief, Cruz responded (in English) that he was not.  (*Id.* at 14).  The exchange was not translated for Gonzalez, who spoke only Spanish.  (*Id.*; *see also* Mem. Law Supp. Def.'s Pretrial Mot. (Docket No. 15) ("Def.'s Mem.") 4).  Moreover, Cruz did not ask Gonzalez whether, in light of the immigration judge's rejection of his application for adjustment of status and his wife's failure to appear, he wanted to seek pre-hearing voluntary departure instead.  (Immigration Hr'g Tr. 14-20).  The immigration judge then found that Gonzalez was not eligible for relief from removal and ordered him removed to the Dominican Republic; it is undisputed that he did not inform Gonzalez about the right to seek pre-hearing voluntary departure.  (*Id.* at 16-17).

Cruz and Gonzalez met one more time after the hearing, on May 29, 2007.  (Tr. 20-21, 48; Defense Ex. B).  As reflected in Cruz's notes from the meeting, Gonzalez told Cruz that he did not want to appeal because he wanted to go home to the Dominican Republic as soon as possible.  (Tr. 21, 49; Defense Ex. B).  Cruz testified at the evidentiary hearing in this case that that represented a change of heart by Gonzalez, as he had previously indicated a single-minded desire to remain in the United States as long as possible.  (Tr. 51-52).  Curiously, though, she did not ask Gonzalez why he had changed his mind.  (*Id.* at 52).  Approximately six months after Gonzalez's meeting with Cruz, in November 2007, Gonzalez also sent a letter to the Department of Justice (the "November 2007 letter") requesting that he be deported as soon as possible.  (Decl. (Docket No. 19) ("Second Habib Decl."), Ex. A at 2).  No appeal was ever filed, and Gonzalez was ultimately removed from the United States in 2008.  (Habib Decl., Ex. G ¶ 3).  In

September 2014, Gonzalez was arrested in New York City.  (Docket No. 1 ¶ 4).  Thereafter, a grand jury returned an indictment charging him with illegal reentry in violation of Section 1326(a).  (Docket No. 10).

## DISCUSSION

Pursuant to Section 1326(d), a defendant charged with illegal reentry in violation of Section 1326(a) may collaterally attack the underlying removal or deportation order upon which the charge is based.  *See* 8 U.S.C. § 1326(d); *United States v. Lopez*, 445 F.3d 90, 94 (2d Cir. 2006); *see also United States v. Mendoza-Lopez*, 481 U.S. 828, 838-39 (1987).  To prevail, the defendant must show by a preponderance of the evidence that (1) he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review"; and (3) "entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d).  To satisfy the third prong, a defendant must show "both a fundamental procedural error and prejudice resulting from that error."  *United States v. Perez*, 330 F.3d 97, 104 (2d Cir. 2003) (internal quotation marks omitted).

## A.  Fundamental Unfairness

In this case, whether Gonzalez can prevail in his collateral attack turns largely on the third prong of Section 1326(d) — whether entry of his order of removal was "fundamentally unfair" — so the Court will begin there.  More specifically, the Court will first address Gonzalez's arguments that he can establish "fundamental procedural error" through either the immigration judge's failure to advise him of his right to seek voluntary departure or Cruz's provision of ineffective assistance of counsel.  Then the Court will turn to the issue of prejudice.

1. **Fundamental Procedural Error**

   a. **The Immigration Judge's Failure To Advise Gonzalez of Voluntary Departure**

As noted, Gonzalez argues first that the immigration judge's failure to inform him about his right to seek voluntary departure was a fundamental procedural error. (Def.'s Mem. 13). The Second Circuit has not yet addressed whether such a failure can render a removal order fundamentally unfair. In *Copeland*, however, the Court of Appeals addressed whether an immigration judge's failure to inform an alien about another form of discretionary relief — waiver of deportation pursuant to the former Section 212(c) of the Immigration and Nationality Act[1] — can render entry of a removal order fundamentally unfair. *See* 376 F.3d at 70-73. The Court of Appeals rejected the position taken by the majority of other Circuits to address the issue, and joined the Ninth Circuit in holding that, although Section 212(c) relief is discretionary, the failure to inform an alien of his right to seek such relief "may be fundamentally unfair." *Id.* at 71; *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049 (9th Cir. 2003). "The issue," the Court explained, "is not whether Section 212(c) relief is constitutionally mandated, but whether a denial of an established right to be informed of the possibility of such relief can, if prejudicial, be a fundamental procedural error. We believe that it can." 376 F.3d at 72.

The Court gave several reasons for its conclusion. First, the Court emphasized that an immigration judge, "unlike an Article III judge, is not merely the fact finder and adjudicator but also has an obligation to establish the record," especially (although not only) in *pro se* cases. *Id.* at 71 (internal quotation marks omitted). Second, and related, although an immigration judge ultimately has discretion over whether to grant Section 212(c) relief, he or she has no discretion

---

[1]     Waiver of deportation has since been replaced by cancellation of removal. *See* 8 U.S.C. § 1229b. The Court uses the terms waiver of deportation and cancellation of removal interchangeably in this opinion.

over whether to hold a hearing if requested.  "In fact, under applicable regulations," the Court

noted, an immigration judge "must both inform an eligible alien of his or her right to a Section

212(c) hearing, and thereafter hold such a hearing, if requested."  *Id.* at 72 (citations omitted).

And, as the Court had held, "'[w]hen a regulation is promulgated to protect a fundamental right

derived from . . . a federal statute, and the INS fails to adhere to it, the challenged deportation

proceeding is invalid . . . .'"  *Id.* (quoting *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993)).

Finally, the Court stressed that deportation "usually has very serious consequences" and that, for

many aliens, Section 212(c) was "the only available avenue of relief."  *Id.* at 72-73.  Citing the

Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), the Court concluded that "the

right to seek such relief, even if discretionary, cannot be lightly revoked."  376 F.3d at 73.

In light of *Copeland*, the only courts within the Second Circuit that have addressed the

question presented here have held that an immigration judge's failure to advise an alien of his

right to seek voluntary departure may qualify as a fundamental procedural error for purposes of

Section 1326(d).  *See Garcia*, 2008 WL 3890167, at *7-9; *see also United States v. Tenn*, 888 F.

Supp. 2d 213, 231 (D. Conn. 2012) (noting that the deprivation of voluntary departure rights may

constitute "a fundamental error in a deportation proceeding, giving rise to a basis to seek

collateral review of the deportation order," but finding that no fundamental error occurred

because the defendant had not shown prejudice (internal quotation marks omitted)); *United*

*States v. Brown*, 148 F. Supp. 2d 191, 199 (E.D.N.Y. 2001) (holding, before *Copeland*, that the

failure to give the defendant the opportunity to depart voluntarily constituted a procedural defect

that "impinged upon the fundamental fairness of the hearing" (internal quotation marks

omitted)).  The Ninth Circuit — the only other Court of Appeals that has held that an

immigration judge's failure to advise an alien about his right to seek discretionary relief can

render entry of a removal order fundamentally unfair — has reached the same conclusion.  *See*

*United States v. Melendez-Castro*, 671 F.3d 950, 954-55 (9th Cir. 2012); *see also, e.g.*, *United*

*States v. Lopez-Menera*, 542 F. Supp. 2d 1025, 1030 (N.D. Cal. 2008) (dismissing a Section

1326(a) indictment in light of the fact that the defendant had not been afforded the right to seek

voluntary departure).

       This Court agrees with those Courts.  Indeed, as Judge Ross held in her well-reasoned

opinion in *Garcia*, the Second Circuit's decision in *Copeland* all but compels that conclusion.

*See* 2008 WL 3890167, at *7 ("Virtually all the considerations that the *Copeland* court relied

upon . . . also support the conclusion that deprivation of voluntary departure rights under § 1229c

may constitute a fundamental error.").  First, although the decision to grant voluntary departure

is ultimately discretionary, "the right to seek that relief, . . . like § 212(c) relief, is directly

conferred by a federal statute that is implemented by federal regulations."  *Id.* (citation omitted).

Second, as with Section 212(c) relief, applicable regulations require an immigration judge to

inform an alien about his or her statutory right to seek voluntary departure — and if the

immigration judge fails to do so, the order of removal will be vacated and the matter remanded

back to the immigration judge.  *See* 8 C.F.R. §§ 1240.11(a)(2), 1240.26; *Cordova*, 22 I & N Dec.

at 971-72.  Thus, "as with § 212(c) relief, the 'right to be informed of the possibility' of

voluntary departure relief, although the relief itself is not 'constitutionally mandated, . . . [is] an

established right.'"  *Garcia*, 2008 WL 3890167, at *7 (quoting *Copeland*, 376 F.3d at 72).

Third, just as the Supreme Court had recognized the significance of being able to seek Section

212(c) relief, *see St. Cyr*, 533 U.S. at 321-22, the Court has acknowledged that voluntary

departure is "highly beneficial to an alien and . . . often conferred when sought," *Garcia*, 2008

WL 3890167, at *7 (citing *Dada*, 128 S. Ct. at 2314-15).  Finally, and "[m]ost significantly, the

'very serious consequences' of deportation militate in favor of treating voluntary departure rights

as 'fundamental [in] nature.'"  *Id.* at *8 (quoting *Copeland*, 376 F.3d at 72, 73).[2]

It is true, as the Government argues here, that voluntary departure differs from Section

212(c) in one fundamental respect: If granted, voluntary departure does not allow an alien to

remain in the United States, but only affects the manner in which the alien must leave the

country.  (Gov't Mem. Law Opp'n Def.'s Mot. To Dismiss (Docket No. 16) ("Gov't Mem.")

7).  As Judge Ross explained, however, voluntary departure is nonetheless significant, because

"an alien permitted to voluntarily depart the United States in lieu of being deported is not subject

to felony prosecution under § 1326 upon a subsequent unauthorized entry into the country."

*Garcia*, 2008 WL 3890167, at *8.  Further, the Government's argument is largely foreclosed by

the Circuit's decision in *Copeland*, which focused on the consequences flowing specifically from

*deportation*, not just from having to leave the country.  *See Copeland*, 376 F.3d at 71 ("It does

not follow [from the fact that relief is discretionary], however, that where an alien is erroneously

denied information regarding the right to seek such relief, and the erroneous denial of that

information results in a deportation that likely would have been avoided if the alien was properly

informed, such error is not fundamentally unfair . . . ."); *id.* at 72 ("Deportation usually has very

---

[2]        The Supreme Court's decision in *Mendoza-Lopez*, cited by the Government, is not to the contrary.  In that case, the Court noted, in dicta, that it had previously decided that certain types of errors in criminal cases, including use of a coerced confession and adjudication by a biased judge, render a criminal proceeding fundamentally unfair.  *See* 481 U.S. 828 at 839 n. 17. Although the examples listed in *Mendoza-Lopez* are admittedly more severe than the error here, the Court did not say that *only* those types of errors render a proceeding fundamentally unfair. Indeed, it explicitly "decline[d] . . . to enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review."  *Id.*  And, in any event, the Second Circuit in *Copeland* has already found that arguably less serious errors may render a proceeding fundamentally unfair, and this Court is bound by that decision.

serious consequences . . . .").  Those consequences do not disappear merely because an alien is granted the option to voluntarily depart rather than to remain in the country.

Nor is the Court persuaded by the Government's argument that, even if the failure to inform an alien about the availability of voluntary departure can constitute a fundamental procedural error when voluntary departure would facilitate readmission, it does not in this case because Gonzalez was statutorily ineligible for admission to the United States.  (Gov't Mem. 7 (citing 8 U.S.C. § 1182(a)(2)(A)(i)(II)).  As an initial matter, that argument misunderstands the nature of the inquiry.  In *Copeland*, the Court of Appeals analyzed whether the failure to inform an alien about Section 212(c) relief constituted a fundamental procedural error (*i.e.*, step one of the two-part analysis) by examining the nature of that relief in general, not the facts of the particular case before it.  *See, e.g.*, *Copeland*, 376 F.3d at 72-73 (noting that deportation "usually" has very serious consequences and that Section 212(c) relief is the only available form of relief "for many aliens").  The relative advantages of voluntary departure for a particular alien may make that alien more or less likely to seek such relief, but that goes to the question of prejudice, not to whether a particular type of error can render a proceeding fundamentally unfair.

Second, even if the Court were to look to the individual circumstances of this case, the Government's argument would still fail.  For one thing, as Gonzalez points out in his reply, voluntary departure would have made obtaining a waiver of inadmissibility for the purposes of procuring a nonimmigrant visa easier.  (Reply Mem. Law Supp. Def.'s Pretrial Motion (Docket No. 17) ("Def.'s Reply") 7-8 (citing 8 U.S.C. § 1182(d)(3); 8 C.F.R. § 212.2; 8 C.F.R. § 212.4)).  Additionally, even if voluntary departure would not facilitate readmission in Gonzalez's case, the other benefits of voluntary departure are sufficient.  The Government argues that the only other benefit would be freedom from criminal prosecution, and notes that "Courts . . . have rejected

13

claims of prejudice or injury entirely contingent on a person's own illegal conduct." (Gov't's Mem. 8). In making that argument, however, the Government relies largely on cases about mootness. (*Id*. 8-9 (citing *Lane v. Williams*, 455 U.S. 624 (1982); *United States v. Blackburn*, 461 F.3d 259 (2d Cir. 2006)). In each of those cases, the Court dismissed the case as moot because the possibility that a previously served sentence could play a role in future sentencing determinations was not sufficient to give the defendant a legally sufficient interest in the case. *See Lane*, 455 U.S. at 630-32; *Blackburn*, 461 F.3d at 262-63. Those cases do not speak directly to the issue here. Nor is *Sims v. Superintendent of Clinton Correctional Facility*, 887 F. Supp. 571 (S.D.N.Y. 1995), upon which the Government also relies, on point. In that case, the district court found that a sentencing judge did not err when he failed to inform a criminal defendant that pleading guilty could subject him to heightened penalties should he commit another crime. *Id.* at 575. Here, however, there is no dispute that the immigration judge's failure to inform Gonzalez about the availability of voluntary departure was not only error, but error that would have required reversal on direct appeal. *See Cordova*, 22 I & N Dec. at 971-72.

Ultimately, that is the critical point: If Gonzalez had raised the immigration judge's error on direct appeal, his order of removal would have been vacated. *See United States v. Gill*, 748 F.3d 491, 506 (2d Cir. 2014). Notably, at oral argument, the Court asked the Government if it could identify any case holding that an error that would have resulted in vacatur of a deportation order on direct appeal was not "fundamental" for purposes of Section 1326(d) (March 18, 2015 Hr'g Tr. (Docket No. 23) 11-14), and it could point to only one case: *United States v. Perez-Gomez*, No. 13-CR-288 (MHT), 2014 WL 6687586 (M.D. Ala. Nov. 26, 2014), which disagreed with Judge Ross's analysis in *Garcia* and held that the failure to instruct an alien about the right to seek voluntary departure cannot qualify as fundamental for purposes of Section 1326(d).

Were this Court writing on a blank slate, the *Perez-Gomez* Court's analysis (which is largely adopted by the Government here) might well be persuasive.  But this Court is not writing on a blank slate, and the *Perez-Gomez* Court's reasoning — that "while the lack of an opportunity to seek voluntary departure might be redressable on a direct appeal, it is not sufficiently core to the removal proceeding that it should be redressable in a collateral proceeding," 2014 WL 6687586, at \*17; *see also id.* at \*16 (emphasizing that "the challenge . . . to the removal proceeding is *collateral* and not *direct*") — is inconsistent with *Copeland* and other Second Circuit precedent, which holds that "the standard of review [of a deportation order] is not higher on collateral attack than on direct attack," *United States v. Perez*, 330 F.3d 97, 103 (2d Cir. 2003).  Accordingly, the Court joins the Ninth Circuit and every other court that has decided the issue in this Circuit in holding that the failure to inform an alien about the availability of voluntary departure, if prejudicial, can render the entry of the deportation order fundamentally unfair for purposes of Section 1326(d).

### b.  Ineffective Assistance of Counsel

In the alternative, Gonzalez argues that entry of the removal order was fundamentally unfair because he received ineffective assistance of counsel from Cruz.  As the Second Circuit has held, an alien can satisfy the "fundamental unfairness" requirement of Section 1326(d) by showing that he was "deprived of effective assistance of counsel . . . and that prejudice had resulted."  *Id.* at 104.  More specifically, an alien must show "1) that competent counsel would have acted otherwise, and 2) that he was prejudiced by his counsel's performance."  *Id.* at 101 (internal quotation marks omitted).  Here, Gonzalez argues that he was deprived of effective assistance of counsel because Cruz failed to advise him about his right to seek voluntary departure and erroneously advised him that he had other potential means of staying in the United

States.  Although the Court finds that Cruz did mention voluntary departure to Gonzalez, it agrees that her performance fell well below the performance of competent counsel in several respects.

First and most significantly, Cruz erroneously believed — and led Gonzalez to believe — that, if Gonzalez's wife appeared at the deportation hearing, he might be granted adjustment of status pursuant to Section 245(i); in fact, however, Gonzalez was statutorily ineligible for such relief.  (Strikingly, notwithstanding her erroneous views, Cruz made no effort to secure Gonzalez's wife's presence at the hearing.  (Tr. 63).)  Compounding matters, Cruz erroneously believed that, even if the immigration judge denied Gonzalez's request for adjustment of status, his case would be "arguable" on appeal; in fact, there would have been nothing to argue on appeal as a matter of law.  In the context of this case, those fundamental misunderstandings of the law plainly rose to the level of ineffective assistance of counsel, as they prevented Gonzalez from making a knowing and intelligent decision about what relief to seek.  *See, e.g.*, *Greiner v. Wells*, 417 F.3d 305, 325 (2d Cir. 2005) (noting that courts have found ineffective assistance of counsel based on "a legal error or a misunderstanding of the law" and citing cases).  Put simply, competent counsel would have understood that Gonzalez's choice was between certain deportation and seeking voluntary departure, and advised Gonzalez that — whatever his desires were to remain in the United States — his only rational choice was to seek voluntary departure. *See, e.g.*, Conn. Rules of Prof'l Conduct 2.1 ("In representing a client, a lawyer shall exercise independent professional judgment and render candid advice.").

Second, given that voluntary departure was the only form of relief potentially available to Gonzalez, Cruz had an obligation to raise it more than once.  At a minimum, she should have raised the option when it became apparent that Gonzalez's wife was not going to appear at the

hearing — foreclosing the only other avenue of relief for which she (erroneously) believed Gonzalez was eligible. And she certainly should have raised it after the immigration judge denied Gonzalez's application for adjustment of status, before he entered the order of removal. *See Garcia*, 2008 WL 3890167, at *10 (finding ineffective assistance where counsel did not pursue voluntary departure, including after the immigration judge had rejected all of counsel's requests). Cruz testified that she did not do so because Gonzalez had made clear that he wanted to remain in the United States. (*See, e.g.*, Tr. 19, 52-54) But Cruz took the time at the hearing to caution Gonzalez that he would remain detained if he reserved appeal (Immigration Hr'g Tr. 17), even though that warning would have been equally unnecessary had Gonzalez made clear that his sole desire was to remain the United States as long as possible. Further, while Gonzalez's supposed desire to remain in the United States may be relevant to the question of prejudice (which is addressed below), it does not excuse Cruz's failure to revisit voluntary departure when all other avenues of relief were unambiguously unavailable. Competent counsel, knowing that there was no basis for appeal ("arguable" or otherwise), would have at least discussed the option with Gonzalez at that point.[3]

---

[3]       Notably, the foregoing were not Cruz's only errors and shortcomings in this case. For example, she testified that Gonzalez was eligible for post-merits voluntary departure (Tr. 14, 43); in fact, however, he was statutorily ineligible because he had been incarcerated for more than 180 days as a result of his Connecticut conviction. (Despite her erroneous belief, Cruz did not discuss post-merits voluntary departure with Gonzalez, either in advance of the deportation hearing or upon entry of the order of deportation. (Tr. 53)) Additionally, Cruz initially testified that "good moral character" was a requirement for pre-merits voluntary departure (although she demurred when pressed on the issue and said that she would need to consult the statute). (Tr. 41-42). Although it is a requirement of post-merits voluntary departure, it is not a requirement for pre-merits voluntary departure. Finally, she could not identify the standard of review that would have applied on appeal if the immigration judge had denied a request for voluntary departure, and testified that she could argue on appeal that an immigration judge "abused his discretion" in denying voluntary departure. (Tr. 9, 74). In fact, the standard would have been *de novo* review — the same standard that applies to all discretionary decisions by immigration judges. *See Matter of Pinzon*, 26 I. & N. Dec. 189, 196 (BIA 2013); 8 C.F.R. § 1003.1(d)(3)(ii). Those

### 2.  Prejudice

The question becomes, then, whether Gonzalez has demonstrated prejudice.  *See Perez*, 330 F.3d at 104.  The Second Circuit has held that "[p]rejudice is shown where 'defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred.'"  *Copeland*, 376 F.3d at 73 (quoting *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002)).  In other words, Gonzalez must show that "there is a reasonable probability that, but for [the fundamental procedural] errors, the result of the proceeding would have been different."  *Id.* (internal quotation marks omitted).  To meet that burden, he must demonstrate *both* a reasonable probability that he would have sought voluntary departure *and* that such relief would have been granted.  Beginning with the second inquiry, the Court finds that Gonzalez has shown a reasonable probability that a request for voluntary departure would have been granted.  To be sure, the Government points to cases upholding an immigration judge's denial of voluntary departure on the basis of prior drug convictions.  (Govt.'s Mem. 15-16 (collecting cases)).  But as Gonzalez points out (Def.'s Mem. 15-16) (collecting cases)), there are many other cases coming out the other way.  *See, e.g.*, *In re Jimenez*, 2011 Immig. Rptr. LEXIS 7466 (BIA 2011) (unpublished) (granting voluntary departure despite a conviction for possession of a controlled substance); *In re Chiailui-Dix*, 2011 Immig. Rptr. LEXIS 848 (BIA 2011) (granting voluntary departure despite a conviction for possession of heroin).  Gonzalez's burden is not to show that he would have been granted voluntary departure had he sought it.  He need only show a "reasonable probability" that he would have obtained the relief if he had requested it, and he has done so.

---

errors and shortcomings were not as material here, but they strengthen the conclusion that Cruz's performance fell far below that of competent immigration counsel.

The Court also finds that, but for the fundamental procedural errors committed by the immigration judge and immigration counsel, there is a reasonable probability that Gonzalez would have sought voluntary departure. It is true that, at his removal hearing, Gonzalez stated something to the effect that he wanted to "let the judge do it, not me" (Immigration Hr'g Tr. 18) — which corroborates Cruz's testimony that Gonzalez had told her in their first meeting that "he was not going to agree to leave." (Tr. 12, 19-20). But Gonzalez's statement at the removal hearing and the wishes he expressed to Cruz are not reliable barometers of what he would have done had Cruz or the immigration judge correctly advised him that he had no viable options other than seeking voluntary departure. Put simply, any rational person who understood that the choice was between voluntary departure and deportation following additional detention would have chosen to seek the former. And notably, Gonzalez himself ultimately made clear that he would likely have acted consistent with the proverbial rational person: After he was ordered removed and he realized that his deportation was inevitable, with the only question being how long he would be detained pending deportation, he decided not to appeal, and wrote the November 2007 letter to the Department of Justice requesting that he be deported as soon as possible. (Second Habib Decl., Ex. A, at 2). That is, once Gonzalez understood his situation, he reached the only rational conclusion that immediate departure — even pursuant to an order of deportation — was preferable to continued detention followed by the same fate. It follows that there is a "reasonable probability" that, had Gonzalez received appropriate legal guidance from either Cruz or the immigration judge, he would have sought voluntary departure. Given that, and the reasonable probability that he would have obtained such relief, Gonzalez has established prejudice, and the Court finds that entry of the removal order was "fundamentally unfair."

**B.  Exhaustion and the Opportunity for Judicial Review**

Having found that entry of the removal order was fundamentally unfair, the Court turns to the first and second prongs of the Section 1326(d) analysis: exhaustion and the deprivation of judicial review.  It is well established that the first prong, exhaustion, is excused where "an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." *United States v. Sosa*, 387 F.3d 131, 136-137 (2d Cir. 2004).  An alien can similarly satisfy the second prong, the deprivation of the opportunity for judicial review, if his waiver of appeal is not knowing.  *See Copeland*, 376 F.3d at 70.  Significantly, the Second Circuit has previously held that where, as here, the failure to inform an alien about the possibility of discretionary relief constitutes fundamental error, the alien's waiver of appeal cannot be considered knowing.  *See United States v. Lopez*, 445 F.3d 90, 100 (2d Cir. 2006); *United States v. Calderon*, 391 F.3d 370, 375 (2d Cir. 2004).  The same is true if the Court finds ineffective assistance of counsel. *See United States v. Cerna*, 603 F.3d 32, 42 (2d Cir. 2010);  *Perez*, 330 F.3d at 101.  It follows that because Gonzalez satisfies Section 1326(d)'s third prong, he also satisfies the other two.

In arguing otherwise, the Government relies on the November 2007 letter requesting immediate deportation.  In the sentence before Gonzalez makes that request in the letter, Gonzalez states that "[a]n order of removal has been entered against me by immigration and naturalization service, by the privilege of departing," which is followed by a word that is crossed out.  (Second Habib Decl., Ex. A at 2).  Asserting that the crossed-out word is "voluntarily," the Government contends that Gonzalez could have filed a motion to re-open his removal proceedings, and that his failure to do so prevents him from satisfying the exhaustion requirement.  (Govt's Post-Hr'g Mem. 19).  But the significance of the November 2007 letter is unclear at best, as the mere fact that Gonzalez may have used the phrase "depart voluntarily" in a

letter requesting prompt deportation hardly suggests that he was aware of the existence of the discretionary form of relief by that name or that he knew he had the right to apply for such relief. In any event, the Government has waived any argument that Gonzalez failed to exhaust his claims.  At a conference held on March 18, 2015 — at least two days after the Government became aware of the November 2007 letter — the Court asked the Government whether it agreed that, if the Court found that "the failure to advise Mr. Gonzalez of the availability of voluntary departure[] qualifies as fundamental [error] . . . the other requirements of collateral attack on the removal order would be satisfied."  (March 18, 2015 Hr'g Tr. (Docket No. 22) 10).  The Government responded that "that's right . . . [I]f there were a fundamental procedural error and it did cause him prejudice then the Second Circuit cases tell us that his failure to exhaust would be excused and that he would have been denied the opportunity for judicial review."  (*Id.* at 11).  It would be highly unfair to Gonzalez, who relied on that concession (Def.'s Post-Hr'g Mem. 1 ("[T]he Government has correctly conceded that a defendant who shows fundamental procedural error . . . has necessarily satisfied § 1326(d)(1) and (2).")), to allow the Government to backtrack from it now.

## CONCLUSION

For the foregoing reasons, the Court is compelled to conclude that Gonzalez has shown by a preponderance of the evidence that entry of his order of deportation was "fundamentally unfair" within the meaning of Section 1326(d).  As Gonzalez also meets the other requirements of that Section, the Court finds that the order pursuant to which Gonzalez was deported was invalid and that his indictment for illegal reentry after having been deported must be dismissed. Accordingly, Gonzalez's motion to dismiss the indictment is GRANTED.

The Clerk of Court is directed to terminate Docket No. 13 and to close the case.


SO ORDERED.

Date:   May 29, 2015
        New York, New York

JESSE M. FURMAN
United States District Judge